1

2

3

4

5

6

7                          **UNITED STATES DISTRICT COURT**

8                         **EASTERN DISTRICT OF CALIFORNIA**

9

10   UNITED STATES OF AMERICA,              **1:13-cv-341 AWI GSA**

11              Plaintiff,

12        v.                                **FINDINGS AND RECOMMENDATIONS**
                                            **RECOMMENDING THE GRANT OF**
13                                          **PLAINTIFF'S EX PARTE MOTION FOR**
                                            **DEFAULT JUDGMENT**
14

15

16   APPROXIMATELY 335 COUNTERFEIT
     NFL JERSEYS,                           **(Doc. 22)**
17              Defendant.

18

19

20                               **INTRODUCTION**

21        In this *in rem* forfeiture action, Plaintiff United States of America (the "Government" or

22   "Plaintiff") filed an Ex Parte Motion for Default Judgment and for Final Judgment of Forfeiture.

23   (Doc. 22).[1]  No opposition to the government's motion was filed.  The matter was taken under

24   submission without oral argument pursuant to Local Rule 230(g) and the hearing set for this

25   matter was VACATED.  (Doc. 13).  For the reasons set forth below, the Court RECOMMENDS

26   that Plaintiff's motion be GRANTED.

27   _____

28   [1] This is the second Motion for Default Judgment filed in this action.  The first motion was denied without prejudice
     to allow Plaintiff the opportunity to serve potential claimants with notice of these proceedings.  (Doc. 17).

                                            1

**FACTUAL BACKGROUND**

A Verified Complaint for Forfeiture *In Rem* (hereafter "Complaint") was filed on March 8, 2013. The Complaint alleges that the defendant counterfeit jerseys constitute property bearing or consisting of a counterfeit mark in violation of 18 U.S.C. § 2320(a), and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 2323. (Doc. 1 at ¶ 1).

More specifically, in December of 2011, the Department of Homeland Security, Immigration and Customs Enforcement ("HSI"), commenced an investigation into the business activities of the Shoe Farm, a business located at 20370 Avenue 232 in Lindsay, California (the "business" or "store"). The investigation revealed that the owners of the Shoe Farm were involved in trafficking and distributing counterfeit goods.

In particular, on January 26, 2012, at approximately 10:10 a.m., a HSI agent acting in an undercover capacity ("UC") entered the Shoe Farm. At approximately 10:20 a.m., the UC exited the Shoe Farm with a white bag containing three NFL jerseys purchased from the business. Agents followed the UC to a location a few miles north of Avenue 204 where the UC gave the purchased merchandise to HSI Special Agent Jose Carlos. On February 1, 2012, HSI agent Carlos emailed photos of the three NFL Jerseys purchased from the Shoe Farm to Senior Brand Protection Manager Jeni Zuercher, from Adidas International Inc. for authentication. On February 16, 2012, HSI agent Carlos received a Federal Express package from Jeni Zuercher. Enclosed was a declaration of determination dated February 14, 2012, stating that the merchandise was counterfeit. This determination was based on the poor stitching and/or embroidery; incorrect and/or missing labels and/or hang-tags; and incorrect construction of the merchandise.

On May 10, 2012 at approximately 1:25 p.m., a UC HSI agent entered the Shoe Farm again. At approximately 1:46 p.m., the UC exited the Shoe Farm with three black bags containing

nine NFL jerseys purchased from the store.  On May 11, 2012, HSI agent Carlos sent a CD containing photographs of the nine NFL jerseys via Federal Express to Senior Brand Protection Manager Jeni Zuercher from Adidas International Inc. for authentication.  On May 18, 2012, HSI agent Carlos received a Federal Express package from Jeni Zuercher.  Enclosed was a declaration of determination dated February 14, 2012, stating that the merchandise was counterfeit. This determination was based on the poor stitching and/or embroidery; incorrect and/or missing labels and/or hang-tags; and incorrect construction of the merchandise.

On August 14, 2012, at approximately 9:09 a.m., a UC HSI agent entered the Shoe Farm through the Chevron business located within the same building. The UC exited the business at approximately 9:15 a.m. with one black bag containing merchandise purchased from the Shoe Farm. The UC stated that the Shoe Farm was closed but that the Chevron employee sold the merchandise to the UC utilizing the cash register located on the Shoe Farm side of the building.

On August 15, 2012, HSI agent Carlos sent the Nike NFL Jersey purchased at the Shoe Farm during the above transaction via Federal Express to Lori Colbert, North America Brand Protection Manager for Nike for authentication. On August 21, 2012, HSI agent Carlos received a UPS package from Lori Colbert.  Enclosed was the jersey sent for authentication and an affidavit dated August 16, 2012, stating that the merchandise was counterfeit. This determination was based on the use of incorrect jersey material; incorrect Jock Tag material; a hang tag missing UPC sticker; incorrect mylar thread material; and a missing care and content label.

As a result of the above, on August 29, 2012, agents with HSI obtained and executed a federal search warrant at the Shoe Farm located at 20370 Avenue 232 in Lindsay, California. During the search of the business, agents located and seized 295 NFL jerseys bearing the Reebok trademark logo, 19 NFL jerseys bearing the Nike trademark logo, and 21 NFL jerseys bearing the Mitchell & Ness trademark logo.

*Interview of Sami Ali Muthana*

Utilizing his California Driver's License, agents identified one of the employees as Sami Ali Muthana (hereafter "Sami"). Sami was subsequently read his Miranda rights.  He waived his rights verbally and in writing, and agreed to speak with agents.

During the post Miranda interview with Sami, he admitted that he was 33% owner of the Chevron and the Shoe Farm (both businesses are located in the same building). Sami advised agents that the other owners of the business were Muneer Muqbel Saeed and Saleh Muqbel Saeed, each with a 33% ownership. When asked about the Shoe Farm, Sami advised that Saleh Muqbel Saeed took care of the Shoe Farm. Sami advised that Saleh Muqbel Saeed utilizes a van to bring merchandise from the Los Angeles area which he orders via the internet. Sami stated that Saleh Muqbel Saeed lives in Porterville and generally travels once or twice a month to Los Angeles to pick up merchandise, depending on how busy the Shoe Farm is.

*Interview of Christian Elizabeth Chavez*

Agents then made contact with another employee of Shoe Farm who was identified at Christina Elizabeth Chavez (hereafter "Christina") and advised her of her Miranda rights. Christina agreed to speak with agents. Christina stated that she had been working at the Shoe Farm off and on since 2008, and that her main duties included running the cash register and cleaning the store. Christian stated that Saleh Muqbel Saeed ordered the merchandise for Shoe Farm and that when merchandise would arrive via United Parcel Services (UPS), the parcels were addressed to Saleh Muqbel Saeed. Christina stated that the deliveries occurred once a week and sometimes once every two weeks.

When asked the price of the jerseys, Christina stated that the Reebok Jerseys sold for $69.00 and the Nike jerseys sold for $89.00. Christina also advised that Saleh Muqbel Saeed was the manager and owner of Shoe Farm and that on average the store sold approximately $2,000.00

4

in merchandise each week.

*Interview with Muneer Muqbel Saeed*

Agents then contacted Muneer Muqbel Saeed (hereafter "Muneer"). After being Mirandized, Muneer agreed to speak with agents. Muneer stated that he was the manager of the Chevron portion of the building and that he had nothing to do with the Shoe Farm business. Muneer advised that sales receipt for the Shoe Farm are often left behind the cash register of the Chevron Mini Mart and that Saleh Muqbel Saeed would pick them up whenever he decided to. When asked where Saleh Muqbel Saeed acquired the merchandise for the Shoe Farm, Muneer advised that UPS dropped off boxes all the time. When asked if he knew where the NFL Jerseys were obtained, Muneer stated that he did not know and that Saleh Muqbel Saeed did not talk about the Shoe Farm business with him.

*Authentication of Merchandise Seized During the Search Warrant*

On September 17, 2012, HSI agent Carlos sent a box containing samples of the Reebok jerseys and Mitchell & Ness jerseys seized from the Shoe Farm during the search warrant executed on August 29, 2012 to Jeni Zuercher, Senior Brand Protection Manager for Adidas International Inc. for authentication. On September 21, 2012, HSI agent Carlos received a declaration from Jeni Zuercher stating that the jerseys were counterfeit. This determination was based on incorrect logo production; incorrect labels and/or tags; and poor quality stitching and embroidery.

On September 21, 2012, HSI agent Carlos sent a box containing samples of the Nike jerseys seized from the Shoe Farm on August 29, 2012 to Lori Colbert, North America Brand Protection Manager for Nike to authenticate the Nike trademark. On September 26, 2012, HSI agent Carlos received a declaration from Lori Colbert stating that the merchandise was counterfeit. The determination was based on missing inserts for the hang tags; missing UPC

stickers from the hangtags; backing on the name and number not completely removed; missing care and content labels; incorrect material for jock tags; and incorrect material for mylar thread.

### PROCEDURAL BACKGROUND

On March 8, 2013, the Government filed a civil action *in rem* for the forfeiture of the defendant 335 Counterfeit Jerseys pursuant to 18 U.S.C. § 2323. (Doc. 1).  On March 15, 2013, the Court issued a Warrant of Arrest of Articles *In Rem* for the counterfeit jerseys. (Doc. 6).

On or about March 15, 2013, both Saleh Maqbel Saeed and the Shoe Farm were served with copies of the following documents : a Verified Complaint for Forfeiture In Rem, a Warrant for Arrest of Articles In Rem, an Order Setting Mandatory Scheduling Conference, a Standing Order in All Civil Cases Assigned to District Court Lawrence J. O'Neill, an Order Recusing Magistrate Judge and Reassigning to Another Magistrate Judge, a Minute Order, a Notice of Availability of Voluntary Dispute Resolution, a Notice of Availability of a Magistrate Judge, and a Notice of Forfeiture Letter dated March 15, 2013.  These documents were sent first class and certified mail to Saleh Muqbel Saeed at his last-known address located at 1109 West Brown Avenue in Porterville, California 93257.  (Doc. 8-1, pg. 2 ).  On or about April 8, 2013, the United States received the signed certified mail receipt. (Doc.8-1, pg. 7).

On or about March 15, 2013, copies of the above-listed documents were sent via first class mail and certified mail to the Shoe Farm at its last-known address located at 20370 Avenue 232 in Lindsay, California 93247, care of the owner/proprietor Saleh Maqbel Saeed.  (Doc. 8-1, pg. 2) On or about March 16, 2013, the United States Attorney's Office received the signed certified mail receipt.  (Doc.8-1, pg. 11).

On or about February 4, 2014,  Muneer Muqbel Saeed  and Sami Ali Muthana were served with copies of the following documents : a Verified Complaint for Forfeiture In Rem, a Warrant for Arrest of Articles In Rem, an Order Setting Mandatory Scheduling Conference, a

Standing Order in All Civil Cases Assigned to District Court Lawrence J. O'Neill, an Order

Recusing Magistrate Judge and Reassigning to Another Magistrate Judge, a Minute Order, a

Notice of Availability of Voluntary Dispute Resolution, a Notice of Availability of a Magistrate

Judge, a Notice of Forfeiture Letter dated March 15, 2013, an Ex Parte Application for Default,

and an Order Denying Motion for Default Judgment Without Prejudice.  These documents were

sent first class and certified mail to Muneer Muqbel Saeed and Sami Ali Muthana at his last-

known address located at 951 W. Teapot Dome in Porterville, California 93257.  (Doc. 18-1, pg.

2 ).  On or about April 8, 2013, the United States received the signed certified mail receipt.

(Doc.18-1, pg. 7).

Additionally, notice of this action was posted on the official government internet site

www.forfeiture.gov for at least thirty (30) consecutive days, beginning March 16, 2013, and proof

of publication was filed with the Court on May 1, 2013.  (Doc. 7).

To date, no claim or answer has been filed by or on behalf of Saleh Maqbel Saeed,

Muneer Muqbel Saeed, Sami Ali Muthana, or the Shoe Farm as required by Rule 5(G) of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  The

government has filed a motion for default judgment against Saleh Muqbel, Muneer Muqbel

Saeed, Sami Ali Muthana, and the Shoe Farm, seeking the entry of a Final Judgment of Forfeiture

vesting all right, title, and interest in the defendant jerseys to the United States of America.

**DISCUSSION**

A.    **Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that a court has discretion to enter

default judgment against a party and provides as follows:

> (2)    By the Court.  In all other cases, the party must apply to the
> court for default judgment.  A default judgment may be entered
> against an infant or incompetent person only if represented by a

7

general guardian, committee, conservator, or other like fiduciary who has appeared. If the party against whom default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing.  The court may conduct hearings - or make referrals - preserving any federal statutory right to a jury trial - when, to enter or effectuate judgment, it needs to : (A) conduct an account; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true.  *Dundee Cement Co. v. Highway Pipe & Concrete Products, Inc*. 722 F.2d 1319, 1323 (7th Cir.  1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

In the context of an in rem forfeiture action, a court considering default judgment should also consider the procedural requirements set forth by the Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983; the Supplemental Rules of Certain Admiralty and Maritime Claims ("Supplemental Rules"); and the court's Local Rules for Admiralty and in rem actions. *See, United States v. $191,910.00*, 16 F.3d 1051, 1069 (9th Cir.1994) *superseded by statute on other grounds* (explaining that, because civil forfeiture is a "harsh and oppressive procedure which is not favored by the courts," the government carries the burden of demonstrating its strict adherence to procedural rules),

**B.     Procedural Requirements**

**1.     *Sufficiency of the Complaint***

Pursuant to the Supplemental Rules, the Government must file a verified complaint that states the grounds for jurisdiction and venue, describes the property being forfeited, identifies the statute under which the forfeiture action is brought, and includes sufficient factual detail to support a reasonable belief that the Government will be able to meet its burden of proof at trial. Fed.R.Civ.P. Supp. R. G(2).  The verified complaint, states the grounds for subject matter jurisdiction, in rem jurisdiction, and venue, describes the items seized and the circumstances

8

surrounding the seizure, and identifies the relevant statutes.  (Doc. 1).  In the absence of assertion of interests in the defendant property, the Court will not question the facts supporting its forfeiture.  As alleged, the facts provide a sufficient connection between the items seized and the illegal activity to support a forfeiture.  On three occasions, law enforcement officers purchased merchandize bearing counterfeit marks from the Shoe Farm.  The United States also seized additional items during the execution of a search warrant.  It was determined through authentication procedures that all of these items were counterfeit.

      **2.**     *Notice by Publication*

Subject to certain exceptions not present here, the Supplemental Rules also require that the Government publish notice of the forfeiture in a manner that is reasonably calculated to notify potential claimants of the action. Fed. R. Civ. P. Supp. R. G(4)(a)(iv). The content of the notice must describe the property with reasonable particularity, state the times to file a claim and to answer the complaint, and identify the name of the government attorney to be served with the claim and answer. Fed. R. Civ. P. Supp. R. G(4)(a)(ii)(A)-(C). This notice requirement may be satisfied by posting a notice on an official internet government forfeiture site for at least 30 consecutive days. Fed.R.Civ.P. Supp. R. G(4)(a)(iv) (C).

Here, publication occurred on the official internet government forfeiture site (www.forfeiture.gov) for 30 consecutive days beginning March 16, 2013.  (Doc. 7).  A copy of the notice was attached to the Declaration of Publication, and it described the property with reasonable particularity.  (Doc. 7, pg. 3).  The notice clearly stated the time requirements to file a claim and an answer. (Doc. 7, pg. 3). Further, the notice provided the name of the attorney to be served with any claim and answer. (Doc. 7, pg. 3). Thus, the Supplemental Rule's notice-content requirements have been satisfied. Fed.R.Civ.P. Supp. R. G(4)(ii)(A)-(C). Similarly, since the notice was published for 30 consecutive from March 16, 2013, on the forfeiture website,

Supplemental Rule's notice requirements with regard to frequency and means were met. (Doc. 7, pg. 4).

### 3.  *Personal Notice*

When the Government knows the identity of the property owner, the Due Process Clause of the Fifth Amendment requires "the Government to make a greater effort to give him notice than otherwise would be mandated." *United States v. Real Property,* 135 F.3d 1312, 1315 (9th Cir.1998). In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action. *Dusenbery v. United States,* 534 U.S. 161, 168 (2002); *see also* Fed.R.Civ.P. Supp. R. G(4)(b). "Reasonable notice, however, requires only that the [G]overnment attempt to provide actual notice; it does not require that the [G]overnment demonstrate that it was successful in providing actual notice." *Mesa Valderrama v. United States* 417 F.3d 1189, 1197 (11th Cir.2005); *Real Property,* 135 F.3d at 1316.

Supplemental Rule G(4)(b) mirrors this requirement, providing for notice to be sent by means reasonably calculated to reach the potential claimant. Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must contain the following information: the date when the notice is sent; a deadline for filing a claim that is at least 35 days after the notice is sent; that an answer or a motion under Rule 12 must be filed no later than 21 days after the filing of the claim; and the name of the government attorney to be served with the claim and the answer. *Id.* Here, the government served Saleh Muqbel Saeed, Muneer Muqbel Saeed, Sami Ali Muthana, and the Shoe Farm with the notice of forfeiture via certified mail to meet this requirement. (Docs.8-1, 18-1; 20-1).

### 4.  *The Time to File a Claim or an Answer*

Pursuant to the Supplemental Rules, any person who asserts an interest in or a right in a forfeiture action must file a verified identifying the interest or right within 35 days after the date

of service of the United States complaint, or 60 days after the completion of the publication in an official government forfeiture site . Fed.R.Civ.P. Supp. G (5)(a)(ii)(A). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing in the forfeiture proceeding. *Real Property,* 135 F.3d at 1317.  Here, more than 60 days have passed since the completion of publication, and more than 35 days have passed since the date that the known potential claimants were provided with notice of the United State's complaint in this action.  No claim has been filed and default has been entered against all known potential claimants. (Docs. 10, 11, 19, 20).

    *5.    **Conclusion***

        The Government has met the procedural requirements applicable to civil in rem forfeiture actions as set forth in 18 U.S.C. § 983, the Supplemental Rules, and the Local Rules for the U.S. District Court for the Eastern District of California. This favors the entry of default judgment and the issuance of a final judgment in forfeiture to vest in the United States all right, title, and interest in the defendant property.

    **C.    *The Eitel Factors Weigh in Favor of Granting Default Judgment***

        The Government seeks judgment against the interests of Saleh Muqbel Saeed, Muneer Muqbel Saeed, Sami Ali Muthana, and the Shoe Farm and also requests that the Court enter a Final Judgment of Forfeiture pursuant to 18 U.S.C. § 2323, forfeiting all right, title, and interest in the defendant currency to the United States, to be disposed of according to law.  The Supplemental Rules do not provide a procedure to seek default judgment in an action *in rem.* However, Supplemental Rule A provides: "The Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules."

        When considering whether to enter default judgment under Fed. R. Civ. P. 55, courts

consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the compliant; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy of favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471–72 (9th Cit.1986).

The discretionary *Eitel* factors outlined above favor granting the Government's motion for default judgment.  First, the Government would be prejudiced by the denial of its motion, spending additional time and effort litigating an action in which no claim has been made. Second, the Government's claims appear to have merit. Third, as set forth above, the Government has adhered to the procedural requirements of a forfeiture action *in rem.* Fourth, the jerseys that were seized and subject to forfeiture is not of such substantial value as to warrant denial of the Government's motion. Fifth, there are no genuine disputed issues of material fact. Sixth, there is no evidence that the failure of any other claimants to answer is due to excusable neglect. Finally, although merits-based decisions are always preferred, it is not practical, as here, where no claims have been filed.  Accordingly, there is no impediment to default judgment sought by the Government and the Court will recommend that the motion be granted.

## RECOMMENDATIONS

For the reasons discussed above, this Court RECOMMENDS that:

1.  The Government's Motion for Default Judgment against the interests of Saleh Muqbel Saeed, Muneer Muqbel Saeed,  Sami Ali Muthana ,and the Shoe Farm be granted;

2.  Within ten (10) days of service of an order adopting these findings and recommendations, the United States shall submit a proposed default and final judgment of forfeiture consistent with the Findings and

Recommendations and order adopting them; and

3.     The Clerk of the Court enter final judgment of forfeiture pursuant to 18

U.S.C. § 2323, forfeiting all right, title, and interest in the defendant jerseys

to the United States to be disposed of according to law.

These Findings and Recommendations are submitted to the district judge assigned to this

action, pursuant to Title 28 of the United States Code section 636(b)(1)(B). Within **fifteen (15)**

days of service of this recommendation, any party may file written objections to these findings

and recommendations with the Court and serve a copy on all parties.  Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge

will review the magistrate judge's Findings and Recommendations pursuant to Title 28 of the

United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections

within the specified time may waive the right to appeal the district judge's order.  *Martinez v.*

*Ylst*, 951 F.2d 1153 (9th Cir.  1991).


IT IS SO ORDERED.

Dated:   __**June 9, 2014**__                    _____**/s/ Gary S. Austin**_____
                                        UNITED STATES MAGISTRATE JUDGE